WACHUSETT REGIONAL SCHOOL DISTRICT COMMITTEE *vs.*
ESKEL S. ERICKSON & another.

Worcester.   May 2, 1967. — June 30, 1967.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Constitutional Law,* Legislation favoring individual, Remedial statute, Who may question constitutionality. *Equity Jurisdiction,* Declaratory relief.

In a suit in equity for declaratory relief by a regional school district committee against the former owners of land validly taken by the plaintiff by eminent domain, this court in its discretion considered the constitutionality of an enacted statute directing the plaintiff to convey the land to the defendants. [79–80]

St: 1964, c. 711, directing a regional school district committee to convey land which it had validly taken by eminent domain to the former owners of the land, who had had actual notice of the taking but had not filed a petition for assessment of damages within the prescribed statutory period, was enacted to rectify a manifest injustice and was not unconstitutional on the alleged ground that it benefited named individuals only and was not authorized by Art. 4 of § 1 of c. 1 of Part II of the Massachusetts Constitution. [81]

BILL IN EQUITY filed in the Superior Court on July 21, 1964.

The suit was heard by *Meagher, J.,* on a master's report.

*Robert C. Milton* for the plaintiff.

*Francis T. Mullin* for the defendants.

SPIEGEL, J. The plaintiff brings this bill in equity for declaratory relief to establish that it has legal title to a certain parcel of land and that St. 1964, c. 711, is unconstitutional. The case was referred to a master and "submitted [to him] on agreements as to certain facts, . . . documents, and a view." The trial judge, after sustaining certain exceptions and allowing certain motions to strike, of both parties, ordered the entry of an interlocutory decree confirming the master's report. A final decree was entered which ordered the plaintiff to "reconvey" to the defendants the "property" in dispute. The plaintiff appealed from the interlocutory and final decrees.[1]

The defendants were the owners of 31.91 acres of land in the town of Holden. On July 16, 1951, the plaintiff purported to take by eminent domain 122 acres of land in the town for school purposes. This taking included the aforementioned land of the defendants. They had not been notified of the taking. It was in August, 1957, that they "had actual knowledge of the taking of their property by the . . . [plaintiff]." Until that time the plaintiff was "unaware" of the defendants' ownership of the 31.91 acres included in the taking. Thereafter the plaintiff "expressed its willingness to reconvey to the . . . [defendants] this

---

[1] We do not comment on various requests for rulings acted on by the trial judge and argued by the parties in their briefs. Requests for rulings have no standing on an appeal in equity. *Klefbeck* v. *Dous,* 302 Mass. 383, 390. *Farrell* v. *Branconmier,* 337 Mass. 366, 368–369.

. . . 31.91 acres, on condition that the . . . [defendants] pay to the . . . [plaintiff] the cost of . . . [the plaintiff's] survey in the amount of . . . $1560.37, and the conveyance by the . . . [defendants] to the . . . [plaintiff] of a right of way.'' The defendants did not file a petition for assessment of damages under G. L. c. 79, § 16, contending that the purported taking was invalid.

For the purposes of this case, and without so deciding, we assume that the taking was a valid one. Based on that assumption, and the finding that the defendants had actual notice of the taking but did not file a petition for damages within the prescribed statutory period, we concern ourselves solely with the constitutionality of St. 1964, c. 711. That act contained a description of the 31.91 acres of land and ''authorized and directed [the plaintiff] to convey by a deed, without covenants'' to the defendants ''whatever right, title and interest'' to that land the plaintiff acquired from the defendants under the order of taking.

1. The defendants argue that the plaintiff ''has no standing to raise the issue of the constitutionality of'' the statute because '' [i]n order to raise the constitutional issue, one must be able to show that the operation of the statute does or will impair his rights . . . [and] [n]o evidence has been produced that the operation of . . . [the statute] does or will impair the rights of the . . . [plaintiff].''

Although some support for the defendants' contention may be found in such cases as *Assessors of Haverhill* v. *New England Tel. & Tel. Co.* 332 Mass. 357, 362, and *Quinn* v. *School Comm. of Plymouth,* 332 Mass. 410, 413, we believe that subsequent decisions provide adequate authority to sustain the standing of the plaintiff to challenge the constitutionality of the statute. Where, as here, declaratory relief is sought by a school committee ''in interpreting the statutes applicable to their duties as to which a controversy has arisen,'' *School Comm. of New Bedford* v. *Commissioner of Educ.* 349 Mass. 410, 412, we may, in our discretion, consider the constitutional issues presented by that contro-

versy. *School Comm. of Boston* v. *Board of Educ.* 352 Mass. 693, 696–697.

2. The plaintiff challenges the constitutionality of St. 1964, c. 711, on the ground that, in "conferring special and private privilege, [it] is not a 'wholesome and reasonable' law within the meaning of Part II, c. 1, § 1, Art. 4 of the Constitution, and such a law, cannot be 'for the good and welfare of this commonwealth' within the meaning of those words as used in the same article." We do not agree.

It is clear from numerous decisions that a statute which confers a benefit on a named individual is not unconstitutional, provided that a "legitimate public good is to be derived from" such a statute. *Gray* v. *Salem,* 271 Mass. 495, 498. See e.g. *Olivier* v. *Fall River,* 306 Mass. 376, 377.

The case of *Danforth* v. *Groton Water Co.* 178 Mass. 472, 477–478, even though the statute construed in that case was of general operation, illustrates the manner in which the public good is served. Such legislation is a device which prevents "a written constitution from interfering with the power to make small repairs which a legislature naturally would possess. . . . [The effect of such a statute] in saving the petitioners from being barred by the statute of limitations . . . is only secondary and accidental. . . . The respondent had incurred a legal obligation to them which although not contractual, was voluntary and legal, and which was entitled to the highest protection of the law, as it sprang from the exercise of eminent domain. . . . There is no especially striking equity in favor of defeating them because of a mistake of procedure, and as the Legislature now has said that they shall not be defeated, we have not much hesitation in yielding to the current of decisions and in accepting its mandate as authoritative in this case." This principle was affirmed in *Dunbar* v. *Boston & Providence R.R.* 181 Mass. 383, 386.

Cases such as *Holden* v. *James,* 11 Mass. 396, and *Paddock* v. *Brookline,* 347 Mass. 230, relied on by the plaintiff, are distinguishable. Those cases involved special statutes which, by their terms, purported "to exempt a named indi-

vidual from the obligations of a general law while allowing the general law to remain in full force and effect as to all other persons.'' *Paddock* v. *Brookline, supra,* p. 236.

Statute 1964, c. 711, does not suspend the operation of a provision of the General Laws. We are of opinion that the General Court did not transcend its powers in enacting this legislation to rectify a manifest injustice.

> *Interlocutory and final decrees*
> *affirmed with costs of appeal.*